UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAMMIE HENDRIX,<br><br>                    Plaintiff,<br><br>          v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social<br>Security,<br><br>                    Defendant. | ) Case No. EDCV 08-1572 JC<br>)<br>)<br>) MEMORANDUM OPINION<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## I.    SUMMARY

On November 12, 2008, plaintiff Tammie Hendrix ("plaintiff") filed a
Complaint seeking review of the Commissioner of Social Security's denial of
plaintiff's applications for benefits.  The parties have filed a consent to proceed
before a United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary
judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion").  The
Court has taken both motions under submission without oral argument.  See Fed.
R. Civ. P. 78; L.R. 7-15; November 14, 2008 Case Management Order ¶ 5.
///

1

Based on the record as a whole and the applicable law, the decision of the Commissioner is AFFIRMED. The findings of the Administrative Law Judge ("ALJ") are supported by substantial evidence and are free from material error.[1]

## II.   BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On or about April 28, 2006, plaintiff filed an application for Social Security Income benefits. (Administrative Record ("AR") 41, 65). Plaintiff asserted that she became disabled on December 21, 2005, due to degenerative disc disease. (AR 65, 72, 77). The ALJ examined the medical record and heard testimony from plaintiff, who was represented by counsel, and a vocational expert on January 29, 2008. (AR 18-40).

On February 28, 2008, the ALJ determined that plaintiff was not disabled through the date of the decision. (AR 18-40). Specifically, the ALJ found: (1) plaintiff suffered from the following severe impairment: degenerative disc disease (AR 11); (2) although plaintiff also suffered from depression, it was not of a severity to cause significant limitations (AR 11); (3) plaintiff's impairments or combination of impairments did not meet or medically equal one of the listed impairments (AR 12-13); (3) plaintiff could perform light work with some limitations[2] (AR 13-16); (4) plaintiff could perform her past relevant work as a receptionist (AR 16); (5) there are jobs that exist in significant numbers in the national economy that plaintiff could perform (AR 16-17); and (6) plaintiff's

---

[1]The harmless error rule applies to the review of administrative decisions regarding disability. See Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1196 (9th Cir. 2004) (applying harmless error standard); see also Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1054-56 (9th Cir. 2006) (discussing contours of application of harmless error standard in social security cases).

[2]The ALJ determined that plaintiff: (i) could lift and/or carry 20 pounds occasionally and 10 pounds frequently; (ii) could stand and/or walk two hours in an eight hour workday; (iii) could sit about six hours in an eight hour workday; (iv) could not balance, vibrate, work around vibrating machines, or work on uneven ground; and (v) could occasionally climb, stoop, kneel, crouch, or crawl. (AR 13).

allegations regarding the intensity, persistence and limiting effects of her symptoms were not totally credible (AR 13-16).

On September 5, 2008, the Appeals Council denied plaintiff's application for review.  (AR 1-3).

## III.  APPLICABLE LEGAL STANDARDS

### A.  Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that she is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months.  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citing 42 U.S.C. § 423(d)(1)(A)).  The impairment must render the claimant incapable of performing the work she previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.  Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

(1)  Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

(2)  Is the claimant's alleged impairment sufficiently severe to limit her ability to work?  If not, the claimant is not disabled.  If so, proceed to step three.

(3)  Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is disabled.  If not, proceed to step four.

///
///

3

|     |
|-----|

(4)     Does the claimant possess the residual functional capacity to perform her past relevant work?[3]  If so, the claimant is not disabled.  If not, proceed to step five.

(5)     Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow her to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five.  Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett); see also Burch, 400 F.3d at 679 (claimant carries initial burden of proving disability).

**B.  Standard of Review**

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error.  Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted).  It is more than a mere scintilla but less than a preponderance.  Robbins, 466 F.3d at 882 (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

///

---

[3]Residual functional capacity is "what [one] can still do despite [ones] limitations" and represents an "assessment based upon all of the relevant evidence."  20 C.F.R. § 416.945(a).

To determine whether substantial evidence supports a finding, a court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing the ALJ's conclusion, a court may not substitute its judgment for that of the ALJ. Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

## IV. DISCUSSION

### A. The ALJ's Step Two Determination/Assessment of Plaintiff's "Therapist's" Opinion Do Not Merit Relief

Plaintiff asserts that the ALJ failed properly to consider the severity of plaintiff's mental impairment and the opinion of plaintiff's treating therapist regarding the same. (Plaintiff's Motion at 8-11). Defendant argues that plaintiff failed to meet her burden to demonstrate that she had a severe mental impairment and articulated legally valid reasons for discounting plaintiff's therapist's opinion. (Defendant's Motion at 3-5). This Court agrees with defendant.

#### 1. Applicable Law

At step two of the sequential evaluation process, a plaintiff has the burden to present evidence of medical signs, symptoms and laboratory findings that establish a medically determinable physical or mental impairment that is severe, and that can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months. Ukolov v. Barnhart, 420 F.3d 1002, 1004-1005 (9th Cir. 2005) (citing 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D)). An impairment is severe if it significantly limits one's ability to perform basic work activities. 20 C.F.R. § 416.920(c). An impairment is "non-severe" if it does not significantly limit one's physical or mental ability to do basic work activities. 20 C.F.R. § 416.921(a). Basic work activities are the "abilities and aptitudes necessary to do most jobs," such as (1) physical functions

like walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, and handling; (2) the capacity for seeing, hearing, speaking, understanding, carrying out, and remembering simple instructions; (3) the use of judgment; and (4) the ability to respond appropriately to supervision, co-workers, and usual work situations. 20 C.F.R. § 416.921(b).

Step two is "a de minimis screening device [used] to dispose of groundless claims." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996). "[T]he ALJ must consider the combined effect of all of the claimant's impairments on her ability to function, without regard to whether each alone was sufficiently severe." Id. (citations omitted). An ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when this conclusion is clearly established by medical evidence. Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005) (citation omitted). Applying the normal standard of review to the requirements of step two, a court must determine whether an ALJ had substantial evidence to find that the medical evidence clearly established that the claimant did not have a medically severe impairment or combination of impairments. Id.; see also Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988) ("Despite the deference usually accorded to the Secretary's application of regulations, numerous appellate courts have imposed a narrow construction upon the severity regulations applied here.").

### 2. The ALJ's Assessment

In his decision, the ALJ noted that plaintiff sought mental health treatment so as not to fall into a depression because she was not working. (AR 12). The ALJ summarized plaintiff's mental health treatment as follows: She commenced treatment on May 4, 2006, with a licensed clinical social worker (Ms. Gastel) who diagnosed plaintiff with major depression, moderate, without psychotic features and who estimated plaintiff's global assessment of functioning (GAF) score was 56, indicative of moderate difficulty in social, occupation, or school functioning.

(AR 12) (citing 6F at 7 [AR 192]).  At the time of the consultation (May 4, 2006), there was no significant evidence based on the social worker's statement for a GAF score that low.  (AR 12).  There was no evidence that a particular GAF score meant a particular limitation in work ability.  (AR 12).  Although plaintiff asserted that she saw the counselor weekly until May 2007, no evidence of regular treatment was submitted.  (AR 12).  On April 4, 2007, the counselor submitted a medical opinion statement which had been formulated by plaintiff's attorney in which the counselor also failed to provide information regarding the scope and frequency of her appointments with plaintiff.  (AR 12).  The counselor asserted that due to plaintiff's back pain, her mental attention and focus were limited.  (AR 12).  The ALJ gave such "evidence" reduced weight because the counselor chose hyperbolic limitations without further explanation, contained in a form consisting largely of check the boxes that was formulated by plaintiff's attorney and because the counselor  was neither a psychiatrist nor a psychologist.  (AR 12).  The ALJ further noted that there was no evidence of a longitudinal history of a psychiatric impairment, of repeated hospitalizations, or of prolonged outpatient treatment. (AR 12).  Plaintiff had neither required nor received extensive psychiatric treatment other than the use of mild anti-depressant medication which plaintiff admitted taking only for sleep.  (AR 12).  Further, plaintiff had neither sought nor participated in counseling since May 2007.  (AR 12).  While the ALJ recognized that plaintiff suffered from depression, he determined that it did not cause more than a minimal limitation in her ability to perform basic mental work activities. (AR 11).  More specifically, the ALJ noted that plaintiff had no resulting limitations in activities of daily living or in social functioning, only mild limitations in concentration, persistence or pace, and that she had experienced no episodes of decompensation.  (AR 11).  In short, the ALJ found no basis for finding that plaintiff had a severe mental impairment or for the imposition of any
///

mental limitations that would preclude the performance of her prior work or similar work. (AR 12).

### 3. Analysis

This Court concludes that plaintiff has failed to meet her burden to demonstrate that she suffered from a severe mental impairment and that the ALJ's assessment of plaintiff's therapist's was free from material error.

First, plaintiff failed to demonstrate that she suffered from a severe mental impairment. As noted above, in order to meet her burden in this regard, it was incumbent upon plaintiff to submit medically acceptable clinical and/or laboratory findings from an acceptable medical source. <u>See</u> 20 C.F.R. §§ 416.908, 416.912(c), 416.913(a), 416.928. She did not do so. Instead, plaintiff relies upon the May 2006 report of a social worker, Rosalyn Gastel. (AR 188-91). As defendant notes, Gastel is not an acceptable source of medical evidence as she is neither a physician nor a licensed psychologist. <u>See</u> 20 C.F.R. § 416.913(a) (listing acceptable medical sources).

Second, as the above-stated portions of the ALJ's decision reflects, the ALJ expressly considered Gastel's opinion and provided legally sufficient reasons to discount it. Among other things, the ALJ noted the absence of supporting evidence for Gastel's initial diagnosis, the absence of supporting evidence regarding the scope and frequency of Gastel's interactions with plaintiff, and the "check the box" format of Gastel's largely unexplained conclusions that plaintiff was functionally limited. These reasons are supported by substantial evidence in the record and are appropriate bases upon which to discount such opinion. <u>See</u> <u>Connett v. Barnhart</u>, 340 F.3d 871, 875 (9th Cir. 2003) (medical opinion properly rejected where treatment notes "provide no basis for the functional restrictions he opined should be imposed on [the claimant]"); <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1149 (9th Cir. 2001) (ALJ need not accept medical if it is conclusory and brief and unsupported by clinical findings); <u>Crane v. Shalala</u>, 76 F.3d 251, 253

(9th Cir. 1996) (ALJ permissibly could reject three evaluations because they were check-off reports that did not contain any explanation of the bases of their conclusions) (citation omitted); Murray v. Heckler, 722 F.2d 499, 501 (9th Cir. 1983) (expressing preference for individualized medical opinions over check-off reports).

Third, even assuming the GAF score assigned by Gastel was otherwise supported, the ALJ properly reasoned that GAF scores do not translate into work limitations for social security purposes. See 65 Fed. Reg. 50746, 50765 (August 21, 2000) ("[The GAF scale] does not have a direct correlation to the severity requirements in our mental disorder listings."); McFarland v. Astrue, 288 Fed. Appx. 357, 359 (9th Cir. 2008) (ALJ's failure to address GAF scores specifically did not constitute legal error);[4] see also Purvis v. Commissioner of Social Security Administration, 57 F. Supp. 2d 1088, 1093 (D. Or. 1999) (noting absence of Ninth Circuit authority presented to suggest that GAF score of 50, by itself, required finding of disability); Howard v. Commissioner of Social Security, 276 F.3d 235, 241 (6th Cir. 2002) (rejecting claimant's argument that ALJ improperly failed to consider GAF score in assessing residual functional capacity).

Finally, substantial evidence supports the ALJ's conclusion that plaintiff did not suffer from a severe mental impairment. The ALJ correctly noted that there was no evidence of a longitudinal history of a psychiatric impairment, of repeated hospitalizations, or of prolonged outpatient treatment, that plaintiff had neither required nor received extensive psychiatric treatment other than the use of mild anti-depressant medication which plaintiff admitted taking only for sleep, and that plaintiff had neither sought nor participated in counseling since May 2007.

As (1) plaintiff has failed to meet her burden to demonstrate that she suffered from a severe mental impairment; (2) the ALJ's determination that

---

[4]The court may cite unpublished Ninth Circuit opinions issued on or after January 1, 2007. See U.S. Ct. App. 9th Cir. Rule 36-3(b); Fed. R. App. P. 32.1(a).

plaintiff did not suffer from a severe mental impairment is supported by substantial evidence and is free from material error; and (3) the ALJ properly considered and discounted the statements of plaintiff's social worker/therapist, plaintiff is not entitled to a reversal or remand on such bases.

## B.     The ALJ Properly Evaluated Plaintiff's Credibility

### 1.     Pertinent Facts

During the January 29, 2008 hearing, plaintiff testified:  In 1987, plaintiff was in a car accident.  (AR 28).  Throughout the years since then, her back would go out on her but be back to normal within a couple of days.  (AR 28).   It was never before as bad as it currently was.  (AR 28).  She received treatment in the form of a TENS unit, physical therapy and medications.  (AR 29).  She took percocet for the pain.  (AR 29).  She was allowed to take up to ten a day and would sometimes take seven or eight a day.  (AR 29).  It hurt to sit after awhile.  (AR 30).  She has a degenerative disc disease.  (AR 29).  She was given three treatment options:   pain medication, a stint in her back to release medication as needed, and surgery.  (AR 30).  She chose pain management because surgery had only a 50/50 chance of success and could worsen her condition, and she did not want to further damage her back.  (AR 30-31).  Aside from the percocet, which she took for pain, she also took tizanidine at night for muscle spasms.  (AR 31).  During the day she sat, stood, laid down, walked and went to the bathroom.  (AR 32).  She took care of her baby but could not lift him.  (AR 32).  She would give the baby baths, but had problems with that and took him into the shower with her when she could.  (AR 32-33).  She did very very light housework, such as dusting.  (AR 32).  Approximately a year earlier, she started having constipation and incontinence problems.  (AR 33).  She was unable to sleep well at night due to pain and body twitches, and usually slept three or four hours.  (AR 33).  She would be unable to do a job eight hours a day either where she could sit down, stand most of the time, or change positions.  (AR 34).  She laid down more than

two hours a day. (AR 34-35). She had problems lifting and was not comfortable lifting anything heavier than a gallon of milk, (AR 35). She left the house to go to the doctor and to see her family. (AR 35). She was previously seeking a counselor for depression once a week so that she would not fall into depression because of not being able to work. (AR 37-38). She took the anti-depressant amitriptyline, but no other anti-depressant. (AR 38).

In his decision, the ALJ recognized that plaintiff has an impairment which could reasonably be expected to cause plaintiff's alleged symptoms, but concluded that plaintiff's statements concerning the intensity, persistence and limiting effects of such symptoms were not credible to the extent they were inconsistent with the ALJ's residual functional capacity assessment. (AR 14). The ALJ noted that plaintiff's complaints suggested a greater level of severity than could be shown by the objective evidence alone and discounted plaintiff's statements regarding the severity of her pain for three reasons.

First, the ALJ concluded that it is likely plaintiff would have sought out alternative means to better control her pain if it was as significant as she claimed. (AR 15). The ALJ pointed out that plaintiff's doctor had recommended lumbar epideral steroid injections, but that plaintiff rejected the injections. (AR 14) (citing Exhibit 4F at 8-9 [AR 168-69]).

Second, the ALJ determined that plaintiff's reported activities of daily living showed she could function in the workplace and were inconsistent with an incapacitating condition. (AR 15). He pointed out that plaintiff took care of children, the youngest of whom was three, that she could lift a gallon of milk, that she traveled to Gardena to visit her family, that she could do light housework, and that she could bathe her youngest child, albeit with difficulty. (AR 15).

Finally, the ALJ noted that the only acceptable medical source opinions in the record reflected that contrary to plaintiff's contentions, she could work and had ///

11

the residual functional capacity assessed by the ALJ. (AR 15) (citing Exhibits 2F and 8F [AR 149-56, 242-47]).

## 2. Pertinent Law

An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment. Orn v. Astrue, 495 F.3d 625, 635 (9th Cir. 2007) (citing Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)). If the record establishes the existence of a medically determinable impairment that could reasonably give rise to symptoms assertedly suffered by a claimant, an ALJ must make a finding as to the credibility of the claimant's statements about the symptoms and their functional effect. Robbins, 466 F.3d 880 at 883 (citations omitted). Where the record includes objective medical evidence that the claimant suffers from an impairment that could reasonably produce the symptoms of which the claimant complains, an adverse credibility finding must be based on clear and convincing reasons. Carmickle v. Commissioner, Social Security Administration, 533 F.3d 1155, 1160 (9th Cir. 2008) (citations omitted). The only time this standard does not apply is when there is affirmative evidence of malingering. Id. The ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004).

To find the claimant not credible, an ALJ must rely either on reasons unrelated to the subjective testimony (*e.g.*, reputation for dishonesty), internal contradictions in the testimony, or conflicts between the claimant's testimony and the claimant's conduct (*e.g.*, daily activities, work record, unexplained or inadequately explained failure to seek treatment or to follow prescribed course of treatment). Orn, 495 F.3d at 636; Robbins, 466 F.3d at 883; Burch, 400 F.3d at 680-81; SSR 96-7p. Although an ALJ may not disregard such claimant's testimony solely because it is not substantiated affirmatively by objective medical

12

evidence, the lack of medical evidence is a factor that the ALJ can consider in his credibility assessment. Burch, 400 F.3d at 681.

Questions of credibility and resolutions of conflicts in the testimony are functions solely of the Commissioner. Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006). If the ALJ's interpretation of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the court's role to "second-guess" it. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

### 3. Analysis

Plaintiff contends that the ALJ improperly evaluated her credibility. As noted above, the ALJ stated three reasons for discrediting plaintiff's allegations regarding the severity of her pain. (AR 15). The Court concludes that the reasons cited by the ALJ constitute clear and convincing reasons for discounting plaintiff's pain testimony, and that such reasons are supported by substantial evidence. Accordingly, a reversal or remand based upon the ALJ's assessment of plaintiff's credibility is not warranted.

First, the ALJ reasonably rejected plaintiff's allegations of disabling pain as inconsistent with the level of treatment she received. It was reasonable for the ALJ to infer that if plaintiff's pain was incapacitating, she would have more aggressively treated it as recommended by her treating physician. In assessing credibility, the ALJ may properly rely on plaintiff's unexplained failure to request treatment consistent with the alleged severity of her symptoms. Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991) (en banc); Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999); see Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1999) (lack of treatment and reliance upon nonprescription pain medication "clear and convincing reasons for partially rejecting [claimant's] pain testimony").

Second, the ALJ properly discredited plaintiff's allegations of disabling pain as inconsistent with plaintiff's daily activities. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (inconsistency between the claimant's testimony

and the claimant's conduct supported rejection of the claimant's credibility); Verduzco v. Apfel, 188 F.3d 1087, 1090 (9th Cir. 1999) (inconsistencies between claimant's testimony and actions cited as a clear and convincing reason for rejecting the claimant's testimony). The ALJ reasonably concluded that a person who was unable to work would not have been able to sustain the daily schedule maintained by plaintiff. This Court will not second-guess the ALJ's reasonable interpretation of such evidence, even if such evidence could give rise to inferences more favorable to plaintiff.

Third, the ALJ's determination that plaintiff's complaints regarding her functionality were inconsistent with the only acceptable medical source opinions in the record is likewise a legally sufficient reason to discount her testimony which is supported by the record. While it would not have been appropriate for the ALJ to disregard plaintiff's testimony solely on this basis, the lack of medical evidence to support the degree of plaintiff's complaints is a factor that the ALJ could appropriately consider in his credibility assessment. Burch, 400 F.3d at 681.

As the ALJ made specific findings stating clear and convincing reasons supported by substantial evidence for discrediting plaintiff's allegations regarding the severity of her pain, the ALJ's credibility determination does not warrant a reversal or remand.

**C.  The ALJ Did Not Materially Err in His Consideration of the Side Effects of Plaintiff's Medications**

**1.  Pertinent Facts**

A May 2, 2006 disability report reflects that plaintiff was then taking lipitor, soma and vicodin and experienced no side effects from such medications. (AR 81).

An August 11, 2006 disability report and a subsequent disability report reflect that plaintiff was then taking carisoprodol, epidrin, hydrocodone with

///

14

APAP, lipitor, lyrica, and prilosec and, other than nausea from the epidrin, experienced no side effects from such medications.  (AR 101, 129).

A May 3, 2007 medication record update reflects that plaintiff was then taking carisoprodol, lunestra, lipitor, maxalt, loratadine, nasonex, chantix, oxycodone with APAP, ibuprofen, amitriptylin, tizamidine, docusate sodium and prilosec.  (AR 265).  The list does not call for or reflect that plaintiff suffered any side effects from such medications.  (AR 265).

A May 4, 2007 report prepared by a nurse practitioner reflects that plaintiff was "on medication that decrease[d] concentration [and her] ability to operate or drive."  (AR 264).  The report does not identify which medication(s) caused such effects.

A November 15, 2007 report from treating physician Dr. Reynolds reflects that plaintiff was to get pain medications from her PMD, and that she was permitted to increase her percocet up to 4 grams of tylenol per day.  (AR 252).

## 2. Applicable Law

An ALJ must consider all factors that might have a significant impact on an individual's ability to work, including the side effects of medication.  <u>Erickson v. Shalala</u>, 9 F.3d 813, 817-18 (9th Cir. 1993) (citing <u>Varney v. Secretary of Health & Human Services</u>, 846 F.2d 581, 585 (9th Cir. 1988), <u>relief modified</u>, 859 F.2d 1396 (1988)).  "[S]ide effects can be a 'highly idiosyncratic phenomenon' and a claimant's testimony as to their limiting effects should not be trivialized."  <u>Varney</u>, 846 F.2d at 585.  Thus, when a claimant testifies about experiencing a known side effect associated with a particular medication, the ALJ may disregard the testimony only if he "support [s] that decision with specific findings similar to those required for excess pain testimony."  <u>Id</u>.  A claimant bears the burden of demonstrating that her use of medications caused a disabling impairment.  <u>See</u> <u>Miller v. Heckler</u>, 770 F.2d 845, 849 (9th Cir. 1985) (claimant failed to meet

///

burden of proving medication impaired his ability to work because he produced no clinical evidence).

### 3. Analysis

Plaintiff contends that the ALJ improperly failed to consider side effects from plaintiff's medications. (Plaintiff's Motion at 6-8). Plaintiff relies upon the above-referenced May 4, 2007 report of a nurse practitioner. Although the ALJ did not expressly address side effects in his opinion, the Court finds no material error in this regard.

First, the ALJ expressly discounted the opinions rendered by the nurse practitioner in the May 4, 2007 report – a credibility assessment which plaintiff has not disputed. (AR 15-16). Notably, the nurse practitioner was not an acceptable medical source.

Second, absent the nurse practitioner's statement, there is no evidence that plaintiff experienced side effects from her medications about which she now complains. As noted above, plaintiff bears the burden of demonstrating that her use of medications caused a disabling impairment. She presented no evidence to the ALJ, let alone clinical evidence, which so indicated.

Finally, even assuming plaintiff experienced the side effects about which plaintiff now complains in Plaintiff's Motion, the record contains no objective evidence that the medications at issue interfered with her ability to work beyond that accounted for in the ALJ's residual functional capacity assessment. See Osenbrock v. Apfel, 240 F.3d 1157, 1164 (9th Cir. 2001) (side effects not "severe enough to interfere with [plaintiff's] ability to work" are properly excluded from consideration); Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005) (ALJ did not err in failing "explicitly to address the drowsiness side-effect of [claimant's] medication" in making an RFC determination as "the ALJ took into account those limitations for which there was record support that did not depend on [the claimant's] subjective complaints").

1        Accordingly, any error by the ALJ in failing expressly to discuss potential

2    side effects from plaintiff's medication, was harmless and does not merit relief.

3        **D.    The ALJ Did Not Materially Err in His Assessment of the Lay**

4             **Witness Evidence**

5        Plaintiff contends that the ALJ failed properly to consider statements of her

6    boyfriend, and failed to provide sufficient reasons for disregarding his statements.

7    (Plaintiff's Motion at 3-4) (citing AR 15, 114-20).  This Court finds no material

8    error in the ALJ's assessment of the lay evidence.

9                **1.    Pertinent Facts**

10       On December 18, 2006, plaintiff's then boyfriend, Robert M. Avalos,

11   completed a third party function report regarding plaintiff in which he reported:

12   He had known plaintiff for six years and lived with plaintiff, plaintiff's daughter,

13   and their son.  (AR 114).  With respect to plaintiff's daily activities, plaintiff

14   would get up and try to move around, but usually ended up back in bed, watching

15   TV.  (AR 114).  She did her best to help take care of their son, but Avalos usually

16   did most of the work, *e.g.*, bathing him, feeding him.  (AR 114).  She could not

17   sleep well so the two were sleeping apart.  (AR 114).  Plaintiff had no problem

18   taking care of her personal needs.  (AR 115-16).  Plaintiff could prepare her own

19   meals and tried to cook maybe once a week, but Avalos did most of the cooking.

20   (AR 116).  She tried to do household chores but Avalos would help her and would

21   end up taking over.  (AR 116).  Plaintiff would go outside once or twice a week,

22   could drive, and could go out alone.  (AR 117).  Although Avalos did most of the

23   shopping, plaintiff tried to get out to the store but would take a couple of hours.

24   (AR 117).  Plaintiff was able to handle money and pay bills.  (AR 117).  Plaintiff

25   watched television, talked on the phone daily, and visited friends monthly, but

26   needed someone to accompany her.  (AR 118).  Plaintiff's condition affected her

27   ability to lift, squat, bend, stand, reach, walk, sit, and kneel.  (AR 119).  Because

28   of her back, plaintiff could barely get about on most days and spent most of her

time in bed.  (AR 119).  She could pay attention well, finish what she started, and follow written and spoken instructions well.  (AR 119).  She did not handle stress well.  (AR 120).  The two were rarely intimate as it caused plaintiff a lot of pain. (AR 120).

At the time of the administrative hearing, plaintiff and Avalos were no longer living together.  (AR 22, 27, 36).

In the ALJ's decision, the ALJ expressly referred to Avalos' statements, finding that they did not credibly establish conclusions regarding plaintiff's residual functional capacity that were different than those assessed by the ALJ. (AR 15).

### 2. Pertinent Law

Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he expressly determines to disregard such testimony and gives reasons germane to each witness for doing so.  Stout, 454 F.3d at 1056 (citations omitted); Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001); see also Robbins, 466 F.3d at 885 (ALJ required to account for all lay witness testimony in discussion of findings) (citation omitted).  The standards discussed in these authorities appear equally applicable to written statements.  Cf. Schneider v. Commissioner of Social Security Administration, 223 F.3d 968, 974-75 (9th Cir. 2000) (ALJ erred in failing to consider letters submitted by claimant's friends and ex-employers in evaluating severity of claimant's functional limitations).

In cases in which "the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination."  Robbins, 466 F.3d at 885 (quoting Stout, 454 F.3d at 1055-56).
///

### 3. Analysis

To the extent the ALJ erroneously failed to discuss particular statements made by plaintiff's boyfriend, any error was harmless. The ALJ expressly noted in his decision that he had considered the lay evidence. (AR 15). The ALJ was not required to discuss every detail of the statement. See Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998); Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (ALJ did not err by omitting from hearing decision discussion of "lay testimony that conflicted with the available medical evidence.") (citation omitted). Further, to the extent the ALJ failed expressly to address statements from plaintiff's boyfriend that were cumulative of plaintiff's statements which the ALJ discounted, or simply corroborated limitations the ALJ already accounted for in his decision, any error was harmless. See Zerba v. Commissioner of Social Security Administration, 279 Fed. Appx. 438, 440 (9th Cir. 2008) (failure to address husband's cumulative lay testimony harmless error); Rohrer v. Astrue, 279 Fed. Appx. 437, 437 (9th Cir. 2008) (rejecting claimant's contention that ALJ improperly rejected lay witness statement of claimant's girlfriend where such statement was cumulative of statements by claimant which ALJ accepted).[5]

Accordingly, any error by the ALJ in not addressing plaintiff's boyfriend's statement in more detail was not material and does not warrant a reversal or remand.

### E. The Vocational Expert's Testimony Supports the ALJ's Disability Determination

Plaintiff claims that the ALJ was not entitled to rely on the vocational expert's testimony in finding that plaintiff could perform her past relevant work at step four or other work at step five, because the hypothetical question posed to the vocational expert assertedly did not contain all of the limitations plaintiff asserts

---

[5]See supra note 4.

the ALJ should have found.  (Plaintiff's Motion at 11-12).  While a hypothetical question posed by an ALJ to a vocational expert must set out all the limitations and restrictions of the particular claimant, Light v. Social Security Administration, 119 F.3d 789, 793 (9th Cir.), as amended (1997) (citing Andrews v. Shalala, 53 F.3d 1035, 1044 (9th Cir. 1995)), an ALJ's hypothetical question need not include limitations not supported by substantial evidence in the record.  Osenbrock, 240 F.3d at 1163-64 (9th Cir. 2001) (citation omitted).  Here, the ALJ posed a hypothetical question to the vocational expert containing all of the limitations the ALJ properly found to exist, and asked the expert whether such an individual could perform any of plaintiff's past work or other jobs in the regional or national economy.[6]  (AR 38).  The vocational expert responded in the affirmative, noting that such an individual could perform plaintiff's past receptionist job and other jobs such as an order clerk (approximately 1200 jobs regionally, 14,000 jobs nationally), assembler (5000 jobs regionally, 60,000 jobs nationally), or charge account clerk (1800 jobs regionally, 21,000 jobs nationally). (AR 39).  As the ALJ's hypothetical question included all of the limitations the ALJ properly found to exist, the testimony of the vocational expert constitutes substantial evidence to support the ALJ's step four and five determinations.  The ALJ did not err, let alone materially err in relying upon such testimony.

///

///

///

///

---

[6]Specifically, the ALJ asked the vocational expert to assume that the hypothetical individual was of the same age and had the same education and work experience as plaintiff, could lift or carry 20 pounds occasionally, and 10 pounds frequently, could or walk two hours of an eight hour day, could sit six hours out of an eight hour day, could not deal with vibrations or uneven ground, could occasionally climb, stoop, kneel, crouch and crawl and could not balance. (AR 38).

## V. CONCLUSION

For the foregoing reasons, the decision of the Commissioner of Social Security is affirmed.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED:   January 4, 2010

_____ /s/ _____

Honorable Jacqueline Chooljian
UNITED STATES MAGISTRATE JUDGE